UNITED STATES DISTRICT COURT
EASTERN DRISTRICT OF MICHIGAN
SOUTHERN DIVISION

**RHONDA SHANE,**

         **Plaintiff,**　　　　　　No. 12-cv-10696-GER-DRG

　　　　　　　　　　　　　　　　　Hon. Gerald E. Rosen

**vs.**

**ACCOR NORTH AMERICA, INC., d/b/a
MOTEL 6, OPERATING LP #1069,**

         **Defendant.**
_____/

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

I.　　INTRODUCTION

　　This diversity "slip and fall" tort action is presently before the Court on the Motion for Summary Judgment filed by Defendant Accor North America, Inc. ("Accor"). Accor owns a Motel 6 in Flint, Michigan. Plaintiff Rhonda Shane was a guest at the Flint Motel 6 in December 2008 when she slipped and fell on black ice on the sidewalk in front of her room. Defendant now moves for summary judgment claiming it did not owe a duty to warn of, or protect Plaintiff from, the black ice condition on its property.

　　Having reviewed and considered Accor's Motion and supporting brief, Plaintiff's response thereto, and the entire record of this matter, the Court has determined that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Therefore, the

Court will decide this matter "on the briefs." See Eastern District of Michigan Local Rule 7.1(f)(2). This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Plaintiff Rhonda Shane, a forty-year-old woman, has lived in Michigan most of her life. [*See* Plaintiff's Dep. pp. 9-10.] She currently resides in Detroit, Michigan. *Id.* On December 25, 2008, Plaintiff, along with her children and her boyfriend, checked in at a Motel 6 owned by Defendant Accor in Flint, Michigan. *Id.* at 73-74. Plaintiff's mother, who was not checking in at the motel, was also with her at the time. *Id.* at 74. After checking in and after receiving the room keys, Plaintiff and her family drove to their room and parked in front of the door. *Id.* After exiting the car, Plaintiff took one step up onto the sidewalk, but with the second step, she slipped and fell flat on her back. *Id.* Plaintiff testified that, at the time, the sidewalk appeared only to be wet and, therefore, she did not realize that she had stepped onto a patch of black ice until after she fell and touched it. *Id.* at 74-75. Plaintiff claims that the icy patch was in front of the window that was to the left of the door to her room and extended from the building to the edge of the sidewalk, a distance of approximately three and half feet. *Id.* at 76. Plaintiff describes the weather on the day of the incident as sunny, clear but on the chilly side. *Id.* Plaintiff does not recall the exact temperature; however, she refers to that day as "a nice day for Christmas." *Id.*

Although Plaintiff claims that it did not snow that day, she admits there was snow on the ground and she specifically recalls that there were snow piles at the end of the parking lot and in between all of the parking spaces. *Id.* at 77. Plaintiff claims, however, that she

2

saw no snow melting and no wet spots anywhere else in the entire parking lot or on the sidewalk, other than the one spot in front of her room where she fell. *Id.* at 87. Plaintiff further claims that there was no salt on the ground either on the day of the incident or the next day when they checked out. *Id.*

Defendant does not dispute that there was only a trace snow fall on December 25, but points out that it had snowed over an inch the day before, and it snowed almost three inches on December 23rd. Defendant further notes that according to the official weather report for Flint, Michigan, on December 25, 2008, visibility was obscured by mist, and temperatures remained well below freezing throughout the day. The high temperature on Christmas Day, 2008 was 26 ° F., with 11 ° F. as the low. [*See* NOAA Local Climatological Data for December 25, 2008, Defendant's Exhibit B.]

After Plaintiff fell, she pulled herself up off the ground and she and her family went to dinner. *Id.* at 79-80. Later, in order to avoid the danger involved with the black ice, Plaintiff moved her car over one space to insure that she would have bare ground to walk on to get to her room for the remainder of her stay at the Motel 6, *Id.* at 89.

Plaintiff claims that she subsequently called the motel's front desk to report the incident and let management know that there was a black ice in front of her room. *Id.* at 82. However, it did not appear to Plaintiff that anything was done thereafter to remedy the situation as the ice was still there the next day when she checked out. *Id.* at 88. Since Plaintiff did not think that she suffered any serious injury from the fall, she did not go to the doctor until a couple of weeks after the incident when she had pain in her leg and began experiencing "charley horses." *Id.* at 80.

Prior to the incident, Plaintiff worked at Bob's Quality Meats as a crew person. *Id*. at 24. However, she states she has not being able to work since February 2009 because of having surgery as a result of her injuries. *Id*. at 22. Plaintiff alleges that because of her medical condition, it is difficult for her to move and hard to do activities, such as bending, lifting, or even light house work. *Id.* at 41.

On December 27, 2011, Plaintiff filed a two-count Complaint in Genesee County Circuit Court in which she alleged claims of negligence and public nuisance against Defendant Accor. Defendant thereafter timely removed the action to this Court on February 15, 2012 based on diversity jurisdiction. Discovery now has closed and Accor has moved for summary judgment on both counts of Plaintiff's Complaint.

Accor first claims that it owed no duty to Plaintiff because the black ice on which Plaintiff slipped and fell was an "open and obvious" condition. Therefore, Accor contends that Plaintiff cannot make out a legally cognizable negligence claim. Defendant also argues that the black ice condition on which Plaintiff slipped and fell did not constitute a legally cognizable "public nuisance." In her Response, Plaintiff stated that she does not contest summary judgment on her public nuisance claim. Therefore, the Court will summarily grant Defendant's Motion for Summary Judgment on Count II of Plaintiff's Complaint. Accordingly, only Plaintiff's negligence claim remains for adjudication. This Opinion addresses this latter claim.

### III.   DISCUSSION

**A.   STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT**

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted). The Court will apply the foregoing standards in deciding Defendant's Motion for Summary Judgment in this case.

**B.    THE "OPEN AND OBVIOUS" DANGER DOCTRINE**

It is well-settled that it cannot be inferred from the mere fact that an accident has occurred that the injured person was the victim of negligence. *Daigneau v. Young*, 349 Mich. 632, 635, 85 N.W. 2d 88, 90 (1957); *Johnson v. Austin*, 406 Mich. 420, 451, 280 N.W.2d 9, 19 (1979); *Clark v. K-Mart Corp.*, 242 Mich. App.137, 140, 617 N.W.2d 729, 731 (2000), *rev'd on other grounds,* 465 Mich. 416; 634 N.W.2d 347 (2001). Rather, in order to establish a *prima facie* case of negligence, a plaintiff must establish: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached the duty; (3) that the defendant's breach of duty was the proximate cause of the plaintiff's injury; and (4) that the plaintiff suffered damages. *Case v. Consumers Power Co,* 463 Mich. 1, 6; 615 N.W.2d 17 (2000).

In general, the duty of a premises possessor owed to the visitors of the premises is determined based on the status of the visitors. *Stitt v. Holland Abundant Life Fellowship*, 462 Mich. 591, 596–597; 614 N.W.2d 88 (2000); *Bialick v. Megan Mary, Inc.,* 286 Mich. App. 359, 362, 780 N.W.2d 599, 602 (2009). Michigan recognizes three common-law categories of persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, and (3) invitee. *Stitt,* 462 Mich at 596. Where a landowner holds his premises open for a commercial business purpose, a visitor on the premises is an "invitee." *Id.* at 607.

Generally, a premises possessor owes a duty to use reasonable care to protect invitees from an unreasonable risk of harm caused by dangerous conditions on the premises. *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516, 629 N.W.2d 384 (2001), citing *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 609, 537 N.W.2d 185 (1995). However, this

6

duty does not extend to dangers that are open and obvious, unless special aspects of the condition make even an open and obvious risk unreasonably dangerous. *Lugo, supra* at 517, 629 N.W.2d 384. Neither a common condition nor an avoidable condition, however, is uniquely dangerous. *Corey v. Davenport College of Business (On Remand)*, 251 Mich. App. 1, 8-9, 649 H.W.2d 392 (2002). "The possessor of land owes no duty to protect or warn of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner v. Lanctoe*, 492 Mich. 450, 460-61, 821 N.W.2d 88 (2012); *see also Slaughter v. Blarney Castle Oil Co.*, 281 Mich.App. 474, 477-78, 760 N.W.2d 287 (2008) ("The logic behind the open and obvious danger doctrine is that an obvious danger is no danger to a reasonably careful person.").

Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. *Joyce v. Rubin*, 249 Mich. App. 2331, 238, 642 N.W.2d 360 (2002); *Novotney v. Burger King Corp. (On Remand)*, 198 Mich. App. 470, 474-475, 499 N.W.2d 379 (1993). The test is an objective one – the inquiry, thus, is not whether the specific plaintiff knew or should have known that the condition was hazardous, but rather whether a reasonable person in the plaintiff's position would have foreseen the danger. *Slaughter, supra*, 281 Mich. App. at 479, 760 N.W.2d 287, citing *Corey v. Davenport College of Business*, 251 Mich. App. at 5, 649 N.W.2d 392.

In Michigan, the open and obvious danger rule is applicable in snow and ice cases. *See, Perkoviq v. Delcor Homes-Lakeshore Pointe, Ltd.*, 466 Mich. 11, 643 N.W.2d 212

7

(2002); *Kenny v. Kaastz Funeral Home, Inc.*, 472 Mich. 929, 697 N.W.2d 526 (2005); *Janson v. Sajewski Funeral Home*, 486 Mich. 934, 782 N.W.2d 201 (2010); *Hoffner v. Lanctoe, supra*. In determining whether the rule should be applied, Michigan courts ask whether the particular circumstances, including all of the surrounding conditions, render a snow or ice condition open and obvious such that a reasonably prudent person would foresee the danger. *Hoffner, supra*.

With regard to the "open and obvious" status of "black ice," in particular, the surrounding circumstances and specific weather conditions are highly relevant. *Slaughter, supra,* 281 Mich. App at 483, 760 N.W.2d at 292 . Because the defining characteristic of black ice "is that it is either invisible or nearly invisible, transparent, or nearly transparent," *id*, the *Slaughter* court held that to find that a black ice condition was open and obvious requires evidence that the black ice in question "would have been visible on casual inspection before the fall," or that there existed "other indicia of a potentially hazardous condition." *Id.*[1]

---

[1] In *Slaughter*, the plaintiff slipped and fell on black ice while an invitee at a gas station. It was after midnight and the parking lot was paved black so the icy patch was not visible on casual inspection. The court, therefore, examined the record to ascertain whether other evidence of an open and obvious danger existed:

> There was no snow on the ground, and it had not snowed in a week. Before alighting from her truck, plaintiff did not observe anyone else slip or hold onto an object to maintain his or her balance. She did not see the ice before she fell, and could not readily see it afterwards. Although it was starting to rain at the time of plaintiff's fall, the danger and risk presented by a wet surface is not the same as that presented by an icy surface. Contrary to defendant's assertion that the mere fact of it being wintertime in northern Michigan should be enough to render any weather related situation open and obvious, reasonable Michigan winter residents know that each day can bring dramatically different weather conditions, ranging

The Michigan Supreme Court has deemed *Slaughter* to have established "the governing precedent" on the application of the open and obvious danger rule in black ice cases. *See Janson v. Sajewski Funeral Home, Inc.,* 486 Mich. 934, 782 N.W.2d 201 (2010).

In *Janson*, the plaintiff slipped and fell on black ice in the defendant's parking lot. The trial court concluded that the icy conditions in the defendant's parking lot were open and obvious. *See Janson v. Sajewski Funeral Home, Inc.*, 285 Mich. App. 396, 398, 775 N.W.2d 148, 149 (2009). The Court of Appeals reversed. Though the appellate court acknowledged that the weather records and testimony indicated that the temperature remained below freezing on the day of the incident and it had snowed earlier in the day, it found application of the open and obvious danger doctrine inappropriate because it found "nothing in the record to show that plaintiff saw anyone else slip on the parking lot surface, nor [was there] any indication that there was any snow around the area where plaintiff fell." *Id.* at 400, 775 N.W.2d at 151.

The Michigan Supreme Court reversed the judgment of the Court of Appeals and reinstated the summary disposition ruling of the Wayne County Circuit Court. *Janson*, 486 Mich. at 935, 782 N.W.2d at 201. The Supreme Court determined that the Court of

---

> from blizzard conditions to wet slush, to a dry, clear, and sunny day. As such, the circumstances and specific weather conditions at the time of plaintiff's fall are relevant. We are not persuaded that the recent onset of rain wholly revealed the condition and its danger as a matter of law such that a warning would have served no purpose.

281 Mich. App. at 483-84, 60 N.W.2d at 292. Therefore, the court declined to apply the open and obvious danger rule and affirmed to trial court's denial of summary disposition. *Id.* at 484, 50 N.W.2d at 293.

Appeals erred in failing to take account of all of the "specific weather conditions present at the time of the plaintiff's fall," as required by *Slaughter* in considering "indicia of a potentially hazardous condition." *Id.* Specifically, the Court found that the lower court failed to take account of the fact that the plaintiff's slip and fall "occurred in winter, with temperatures at all times below freezing, snow present around the defendant's premises, mist and light freezing rain falling earlier in the day, and light snow falling during the period prior to the plaintiff's fall in the evening." *Id.* According to the Supreme Court, "These wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection." *Id.*

In the aftermath of *Janson*, the Michigan courts have taken a fairly broad approach in considering what "other indicia of a potentially hazardous condition" will support an open and obvious danger finding in black ice cases. For example, the court found sufficient indicia of a potentially hazardous black ice condition to warrant the trial court's application of the open and obvious danger doctrine in *Lowery v. Brookline Management Co., RHP*, 2010 WL 2977141 (Mich. App. July 29, 2010). In that case, the court determined that a reasonable person of ordinary intelligence would have been alerted that a dangerous condition existed where the evidence showed that it had snowed earlier in the day of the incident; that when the plaintiff walked from her apartment to the parking lot earlier in the day the sidewalk was icy; that there was ice and snow on the sidewalk by the back door of her apartment building when she returned later in the evening; and that it was this ice and snow that plaintiff was trying to walk around when she same upon the black ice and slipped and fell.

10

Similarly, in *Torres v. Goodwill Indus. of Greater Grand Rapids, Inc.*, 2010 WL 4978030 (Mich. App. Dec. 7, 2010), the plaintiff testified that she noticed several inches of snow on the parking lot but that the concrete walkway leading to the entrance of defendant's building appeared dry except for what appeared to plaintiff to be some dampness near a pillar where, according to the assistant manager of the store, water from the roof had dripped onto the concrete surface. The plaintiff stepped up onto the walkway in order to avoid the snow and alighted on the damp area thinking it was just wet and, hence, safe, but then she slipped and fell. Applying *Janson* and *Slaughter*, the court concluded that the combination of winter temperatures and abundant snow on the ground rendered black ice within the wet area of concrete an open and obvious hazard. In the *Torres* court's view, "when there is abundant snow on the ground, a reasonable person observing wet pavement should understand that the apparent moisture might have begun to freeze, and thus present an extremely slippery surface." 2010 WL 4978030 at *2.

The Court of Appeals also affirmed the trial court's grant of the defendant's motion for summary disposition based on the open and obvious danger rule in *Muskett v. Grand Prix Floating Lessee, L.L.C.*, 2012 WL 2402639 (Mich. App. June 26, 2012). In that case, the plaintiff, who had been a long term Michigan resident prior to her migration to North Carolina, slipped and fell on black ice in the parking lot of the Residence Inn where she was staying. The record evidence showed that it had snowed on and off earlier in the day of plaintiff's fall. Further, the plaintiff had observed that some plowing of the lot had occurred prior to her arrival and that there was snow piled on the ground in the

11

space immediately adjacent to the space where she parked. The court found that "[t]hese are sufficient indicia under the law of this state to find that a reasonable person should have been aware of the possibility of black ice." *Id.* at *2.

The appellate court similarly affirmed the trial court's ruling on defendant's motion for summary disposition in *Ottman v. Great Lakes Gaming of Michigan,* LLC, 2012 WL 6178156 (Mich. App. Dec. 11, 2012). In that case, the plaintiff slipped and fell on a walkway leading to defendant's casino. The incident occurred in January in Michigan, and the evidence considered by the trial court showed that the plaintiff had lived in southern Michigan and northern Indiana most of her life and was familiar with winter weather in the Michiana area. Further, at the time of the accident, various areas of the pavement of the casino parking lot "glistened," and mounds of snow were visible on the sides of the parking lot and along the side of the walkway where plaintiff fell. The Court of Appeals held that "the objective nature of the premises, including the presence of snow and ice in the parking lot, the glistening black surfaces indicating at a minimum they were wet, with sidewalks bracketed by walls of snow, and the winter temperatures that ranged from below to above freezing (making conditions ripe for the freezing of melted snow) would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection." *Id.* at *3. Therefore, the court concluded that "the trial court correctly found that the icy sidewalk on which plaintiff slipped and fell was an open and obvious condition." *Id.* See *also Walker v. Kilpatrick*, 2011 WL 711146 (Mich. App. March 1, 2011) (finding that in granting the defendant's motion for summary disposition based upon application of the open and obvious danger rule, the trial court properly

considered evidence establishing that that plaintiff was a lifelong Michigan resident whose job required her to be in the elements year-round, that there had been a significant snowfall the day before plaintiff's fall, and that at the time of the fall, there was noticeable snow and ice on neighbor's driveways and sidewalks and along defendant's partially cleared driveway); *Spears v. Providence Hospital and Medical Centers, Inc.*, 2012 WL 4840535 (Mich. App. Oct. 11, 2012) (holding that notwithstanding that there was no snowfall on the date of the incident and the icy patch on which plaintiff fell was not visible, the trial court erred in denying defendant's motion for summary judgment where it had been drizzling prior to plaintiff's accident and the temperature at the time of her fall was below freezing).

By contrast, the Court of Appeals found that a material question of fact regarding whether there were indicia of a potentially hazardous condition and, therefore, reversed the trial court's entry of summary disposition in favor of the defendant in *Bragg v. Daimler Chrysler*, 201 WL 3604428 (Mich. App. Sept. 16, 2010). The court in *Bragg* found that, although like in *Janson,* the plaintiff's fall occurred during the winter and, at the time of the fall, the temperature was below freezing, the evidence also showed that

> the temperature had fluctuated above freezing in the days preceding plaintiff's fall. Further, unlike in *Janson*, there was no precipitation on the morning of plaintiff's fall or the day preceding plaintiff's fall. Although plaintiff acknowledged there was snow on the ground, there was no snow or ice visible in defendant's parking lot and the roads were fairly clear. Like *Slaughter*, the facts of the instant case establish that merely because it was wintertime in Michigan is not enough to render any weather-related situation open and obvious because "reasonable Michigan winter residents know that each day can bring dramatically different weather conditions." Thus, there exists a question of material fact regarding whether weather conditions in the instant case would have alerted an average user of ordinary intelligence to discover the danger.

13

2010 WL 3604428 at * 4 (quoting *Slaughter*, 281 Mich. App. at 483, 760 N.W.2d at 483). *See also Ray v. Lowen Real Estate, L.L.C.,* 2013 WL 1689283 (Mich. App. Apr. 18, 2013). In *Ray*, the court held that the trial court erred in determining that black ice was open and obvious based on the fact that the plaintiff was a long time Michigan resident and therefore should have known that any condensation on the ground would freeze if the temperature dropped lower than anticipated where the evidence also showed that it was a sunny morning and the weather was in the mid to upper 30s, and, therefore, above freezing at the time of plaintiff's fall, and it had not snowed the entire month and had not rained on the day of plaintiffs fall or the previous day. Although the plaintiff admitted he had to use the defroster in his car because his rear window "was a little frosty," that fact "would not have alerted an average person of ordinary intelligence to the presence of black ice considering the lack of precipitation." *Id.* at *6. Therefore, the *Ray* court concluded that "[t]he circumstances presented in this case are far removed from those presented in *Janson* [citation omitted]. Thus, the trial court erred by concluding that the black ice was open and obvious." *Id.*

This case presents different aspects from each line of the foregoing precedents. Fairly stated, the evidence of record shows there was only a trace snowfall on the day of the incident and the weather was referred to as being sunny and clear at the time Plaintiff fell. However, the undisputed evidence also showed that that it had been misting earlier in the day and the temperature never got above 26º. Further, it had snowed over an inch the day before, and three inches two days prior to the day of the accident. And, although

there was no snow on the sidewalk by Plaintiff's room when she arrived, Plaintiff testified that she observed piles of snow at the end of the parking lot and in between all the parking spaces. Though Plaintiff, a life-long Michigan resident, testified that the sidewalk in front of her room only appeared to be wet, given the undisputed evidence of all of the wintry weather conditions, a reasonable person in Plaintiff's position upon "observing wet pavement should understand that the apparent moisture might have begun to freeze, and thus present an extremely slippery surface." *Torres, supra*, 2010 WL 4978030 at *2.

Although this case is admittedly a close call, on balance, the Court concludes that the evidence presented in this case establishes that the black ice on which Plaintiff slipped and fell was an open and obvious condition. Because the condition was open and obvious, Plaintiff may avoid summary judgment only if she can show that there were "special aspects" present. The Michigan Supreme Court has held that special aspects of an open and obvious hazard can give rise to liability when the danger is "unreasonably dangerous" or when the danger is "effectively unavoidable." *See Hoffner, supra.* Plaintiff cannot make this showing. It is well-settled that neither a common condition nor an avoidable condition is uniquely or unreasonably dangerous. *See Corey v. Davenport College of Business (On Remand)*, 251 Mich. App. at 8-9. Black ice is a common condition in Michigan. Furthermore, the icy patch on which Plaintiff here slipped and fell was not unavoidable. Indeed, Plaintiff herself testified that she was able to avoid walking on the patch simply by moving her car over one space so she would have a dry

sidewalk to walk on to get to her room. Therefore, the "special aspects" exception to the open and obvious danger rule does not apply.

In sum, because the black ice on which Plaintiff slipped and fell was "open and obvious," Defendant owed no duty to Plaintiff. Absent a legally cognizable duty, Plaintiff cannot make out a claim of negligence. Therefore, Defendant is entitled to summary judgment as a matter of law.

## **CONCLUSION**

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is GRANTED and this case is DISMISSED in its entirety, with prejudice.

Dated: August 12, 2013

s/Gerald E. Rosen
GERALD E. ROSEN
CHIEF, U.S. DISTRICT COURT

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 12, 2013, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, 313-234-5135